Henry P. Gonzalez, LL.M. (HG 9238)
RODRIGUEZ O'DONNELL
GONZALEZ & WILLIAMS & P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C. 20036
(202) 973-2980    Telephone
(202) 293-3307    Facsimile

Attorneys for Plaintiff, Shipco Transport Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

SHIPCO TRANSPORT INC.

                        Plaintiff,

        v.

JDB INTERNATIONAL INC.

and

LAPTON FREIGHT INTERNATIONAL
LIMITED,

                   Defendants.
-------------------------------------------------------x

**ECF Case**    :
**Civil Action No.: 09 CV 7532 (CM )**

**COMPLAINT**

Plaintiff, Shipco Transport Inc.. (Shipco or Plaintiff), by its attorneys, brings this action civil and maritime in nature against JDB International Inc. (JDB), a corporation, and Lapton Freight International Limited (Lapton), a limited liability company.

<u>**JURISDICTIONAL ALLEGATIONS**</u>

1.    The Jurisdiction of this Court is founded on the admiralty or maritime character of the claim as more fully appears below.   This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    This Court also has civil and admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1331, 1332, and 1333 and 1367.

## VENUE

3.    Venue is proper in this Court as, set forth in Shipco's Terms and Conditions attached to the 11 bills of lading in these shipping matters. The Terms and Conditions, a copy of which is attached hereto as Exhibit A, specifies venue in Clause 23 in the United States District Court for the Southern District of New York.

## THE PARTIES

4.    Plaintiff, Shipco, is a non-vessel operating common carrier (NVOCC) licensed by the Federal Maritime Commission and is a corporation, incorporated in the State of New Jersey with its principal place of business at 80 Washington Street, Hoboken, New Jersey 07080.

5.    Defendant JDB is an NVOCC licensed by the Federal Maritime Commission, and is a corporation organized and existing pursuant to the laws of the Florida, with its place of business from which all JDB's transactions described herein were conducted at 20422 Beach Blvd., Huntington Beach, CA 92648.

6.    Defendant, Lapton, is an NVOCC registered by the Federal Maritime Commission. Upon information and belief, Lapton is a limited liability company organized and existing pursuant to the laws of Hong Kong with its principal place of business at Rm. 1106-07, 11/F Overseas Friendship Building, 12 Yngchm Rd., Luo District, Shgenzhen, China. As a registered NVOCC, Lapton is subject to the subject matter jurisdiction of this Court and by regulation service of process in this action is proper in the United States.

2

## FACTS

**Amounts Owed by Shipper, JDB, and Consignee, Lapton:**

7. Beginning on or about August 1, 2006 and continuing through August 24, 2006, JDB contracted, as evidenced by the statements of account, attached as Exhibit "B" with Plaintiff, Shipco to transport cargo consisting of toys by ocean common carrier from Long Beach, California, to Yantian, China.

8. The amount of freight charged by Shipco and owed jointly and severally by JDB and Lapton, the shipper and consignee respectively in these transactions, is $13,952.00 as is summarized in plaintiff's statement of account dated September 15, 2008.   See Exhibit "B." In addition to freight charges, the statement of account charges JDB with $115,821.93 of charges and fees paid by Shipco to ocean common carriers for demurrage, storage, and related charges pertaining to the shipments in question.  See Exhibits B and C.   [Invoice No. 18689D dated Sept. 3, 2002, in the amount of $2,562.00 described in the statement of account as an air shipment is not intended to be included in this complaint for recovery of damages.]

9. The Consignee for this shipment, Lapton, did not accept delivery of the toys at Yantian in violation of its duty as consignee in the transactions to accept delivery of the cargoes upon the tender of delivery by Shipco.

10. Following tender of delivery to the consignee, Lapton, the containers remained in port at Yantian, China and incurred substantial demurrage, including storage fees, and related charges. These charges were made by ocean common carriers,   Mediterranean Shipping Co. (USA), Inc., $21,856.65 (storage, demurrage, and other charges), and $48,017.80 (abandoned cargo settlement), NYK Line (NA), Inc., $5,000.00, CMA-CGM

3

America, Inc. $29,500.00, and Safmarine, $11,445.98.    See Exhibit "C".    All of the above common carriers were paid by Shipco for a total of $115,821.93.

## ALLEGATIONS
## COUNT I: BREACH OF CONTRACT

11.    Shipco incorporates the allegations in Paragraph 1 through 10 above as if fully set forth herein.

12.    Plaintiff and Defendants JDB entered into contracts of carriage as evidenced by the relevant bills of lading referred to in Statements of Account contained in Exhibit B with terms and conditions attached as Exhibit A.   Bills of Lading referred to herein are dated on or about August 1, 2006 through and including August 24, 2006. Plaintiffs sent invoices to defendant JDB relating to these bills of lading dating from September 2007 through and including April 2008.

13.    The terms and conditions, attached as Exhibit A, relating to the Bills of Lading furnished in this matter require defendant JDB to pay for freight charges of each shipment and also expenses for demurrage, storage and related charges in described in the referenced terms and conditions generally and particularly under clause 9, "Merchant's responsibility."

14.    Following abandonment of the cargoes in Yantian, China on or about August 14, 2006, and following, defendant JDB failed to pay the additional invoices furnished by Plaintiff between the dates of December 18, 2007 and March 26, 2008, for both freight charges and demurrage and violated the terms and conditions of the related bills of lading attached to this complaint as Exhibit A.   Defendant JDB received invoices for demurrage, storage, and related charges from carriers in this matter sent by plaintiff between the dates of December 18, 2007, and March 26, 2008.

4

15.    Shipco has duly performed all obligations, conditions, and promises pursuant to the contracts of carriage, between Defendant JDB and Shipco by furnishing ocean transportation of the cargoes by ocean common carrier resulting in the tender of delivery as agreed to Yantian, China..

16.    Defendant JDB breached the contracts between Defendants and Shipco by failing to pay Shipco the freight charges and related demurrage, storage, and other service charges in accordance with the above mentioned statements of account and invoices.

17.    As a direct and proximate result of Defendants' failure to pay Shipco the freight charges in the total amount of $13,952.00, Shipco suffered damages in that amount. As a further direct and proximate result of defendant JDB's failure to pay Shipco for demurrage, storage and other related charges, Shipco sustained damages by having to pay the underlying carriers the total sum of $115,821.93.   Invoices establishing the charges made to Shipco by the underlying carriers in that amount are attached as Exhibit C.   Shipco paid in full the amounts charged in these invoices.

### COUNT II:    IMPLIED CONTRACT: CONSIGNEE, LAPTON

18. Plaintiff incorporates by reference herein each and every paragraph contained in Count I of the allegations of this Complaint together with the "fact" allegations made herein.

19.  At all times herein mentioned, Lapton, a registered NVOCC, agreed to share profit splits with JDB based on bills of lading issued by JDB or Lapton to their customers, the underlying shippers and consignees. It was for these shipments that Shipco issued its own bills of lading on behalf of JDB, as shipper, and Lapton, as consignee.

20.   Regarding the transactions and bills of lading described in the Statements of Account, Plaintiff alleges on information and belief that Lapton authorized JDB to designate Lapton as consignee on Shipco bills of lading to effect delivery to the underlying consignees.

5

21.    As the proximate result of the agreement between JDB and Lapton to share benefits in the form of profits from the services provided by Plaintiff, Lapton did fully receive the benefits of the services provided by Shipco pursuant to the bills of lading.

22.    Under the Terms and Conditions of the Bills of Lading furnished for these shipments by Shipco, the consignee is included in the description of "Merchant" under Clause 9 of the Terms and Conditions (Exhibit A),   and, therefore, is liable for and responsible for both freight and demurrage, storage and related charges.   The consignee, Lapton, as well as the shipper, JDB, are specifically referred to as a "merchant" pursuant to Clause 9, and therefore, liable for the aforementioned freight and charges.

23.    Further, as the consignee designated in the bills of lading, defendant Lapton was entitled to receive and was liable for all charges and expenses provided in the Terms and Conditions, including demurrage and storage charged by underlying carriers. The underlying carrier invoices to Shipco for the shipments at issue in this complaint and related abandonment and demurrage charges are attached hereto as Exhibit "C".

24.    On the basis of the facts stated herein, the consignee, Lapton is liable under an implied contract to pay Plaintiff with Defendant JDB for the total of freight charges, demurrage, storage and related charges described herein in the total sum of $129,773.93.

25.    Pursuant to the Shipco Terms and Conditions, Exhibit A, Clauses 9 and 19, the shipper, JDB, and the consignee, Lapton, are jointly and severally obligated to pay Plaintiff's attorney's fees.

## COUNT III:   ACCOUNT STATED

26.    On or about September 15, 2008, and continuing, plaintiff, Shipco sent copies to Defendants of the accounts attached hereto as Exhibit B.   The Statement of Account was mailed to Defendant JDB, and Defendant Lapton was notified of the invoices and amounts

6

due by letter, the accounting of which is contained in Exhibit B.

27.    Upon receiving plaintiff's accounts during the period described above, defendants made no payments pursuant to these accounts nor did defendants make any objections orally or in writing to the amounts charged in accounts from the time of billing through and including the date of filing this complaint.

28.    The balance due from JDB and Lapton, jointly and severally liable in this action, was allowed to remain for an inordinate, unreasonable period of time without payment--nearly one year, extending to the date of filing this complaint.

29.    On the basis of defendants' nonpayment of plaintiff's account for an excessive and unreasonable period of time, defendants, and each of them, are legally responsible and jointly and severally liable for an account stated in accordance with the statement of account attached as Exhibit B, in the full amount still outstanding of $129,773.93.

## COUNT IV: QUANTUM MERUIT AND UNJUST ENRICHMENT

30.    Shipco incorporates the allegations in paragraph 1 through 31 above as if fully set forth herein and alleges with respect to defendants, JDB and Lapton, as follows.

31.    Shipco conferred a benefit upon Defendants JDB and Latpon by providing ocean common carrier transportation services incurring ocean shipping freight charges valued in the amount of $13,592.00 as stated on the bills of lading referred to in the Statements of Account in Exhibit B. Further, plaintiff paid all demurrage, storage, and related charges in the sum of $115,821.93 imposed by ocean common carriers, which were the joint and several responsibility and liability of defendants JDB and Lapton to pay (Exhibit C).

32.    Defendant JDB requested the shipping services provided by Shipco and received the benefit of the services together with payment by Shipco of demurrage and other abandonment-related charges, for which JDB did not pay when billed by Shipco.

7

33.    Defendants JDB and Latpon failed and continue  to refuse to pay the outstanding charges to Shipco in the amount of $13,592.00, representing total freight charges billed and $115,821.93, representing demurrage, storage, and related charges.

34.    Defendants, Lapton and JDB, have been unjustly enriched in that they did not pay for the above stated ocean freight and abandonment-related charges that Plaintiff provided benefiting Defendant JDB.

## DAMAGES

35.    By reason of the foregoing, Shipco sustained damages in the total amount of one hundred twenty-nine thousand seven hundred seventy-three dollars and ninety-three cents. ($129,773.93), and plaintiff prays a judgment for damages in that amount against defendants JDB and Lapton, and each of them.   Defendants JDB and Lapton are jointly and severally liable for the obligation.   The judgment sum demanded herein includes the amount of $13,952.00, representing freight charges, which remain unpaid by both defendants.

WHEREFORE, plaintiff, Shipco Transport, Inc. requests that the Court award to plaintiff, Shipco Transport Inc.:

1.    Damages against defendant, JDB in the sum of $129,773.93 for breach of contract, including unpaid freight charges of $13,952.00 and charges for demurrage, storage and related charges from ocean common carriers.

2.    Damages against the consignee, Lapton, pursuant to the bills of lading and related terms and conditions attached to this complaint, and for failure to accept tender of

8

delivery of the cargo and failing to pay the expenses resulting from abandonment in the total amount of $129,773.93, including freight charges of $13,952.00.

      3.   Damages against defendants JDB and Lapton, liable jointly and severally on the basis of quantum meruit for shipping services furnished and money expended by plaintiff in the total sum of $129,773.93, including freight charges of $13,952.00.

      4.   Damages against defendant JDB and Latpon, liable jointly and severally, for account stated in the sum of $129,773.93, including $13,952.00 in payment of Shipco freight charges.

      5.   Attorney's fees, court costs, and expenses of litigation against defendants, and each of them, according to proof.

      6.   Such other and further relief this Court deems just, proper, and appropriate in this case.

Respectfully Submitted,

By:

Henry P. Gonzalez, LL.M. (HG 9238)
**RODRIGUEZ O'DØNNELL**
**GONZALEZ & WILLIAMS, P.C.**
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C. 20036
(202) 973-2980    Telephone
(202) 293-3307    Facsimile

Dated: *August 21, 2009*

9

# Exhibit A

Bill of Lading Terms and Conditions

## 1. DEFINITIONS

| | |
|---|---|
| **Carriage:** | Means the whole of the operations and services undertaken or performed by or on behalf of the Carrier in respect of the Goods. |
| **Carrier:** | means the Company stated on the front of this Bill of Lading as being the Carrier and on whose behalf this Bill of Lading has been signed |
| **Charges:** | Means freight and all expenses and money obligations incurred and payable by the Merchant. |
| **COGSA:** | Means the Carriage of Goods by Sea Act of the United States of America approved on 16th April 1936. |
| **COGWA:** | Means the Hague-Visby Rules. |
| **Combined Transport:** | Arises where the carriage called for by this Bill of Lading is not a Port to Port shipment. |
| **Container:** | Means any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods. |
| **Defenses:** | Means all rights, immunities, exclusions, exemptions, defenses, limitations, however described (no matter whether arising by law or by contract), which might abate, bar, defeat or diminish any recovery against the Carrier. |
| **Freight:** | Means all of the following relating to or in connection with the Goods: ocean freight and other charges provided by the Carrier's applicable tariff, including but not limited to ad valorem charges, advance charges and less than full container load service charges, currency adjustment factor, bunker adjustment factor, surcharges, war risk premiums, arbitrary and accessorial charges; all charges arising as a result of changing the port of loading or discharge, and expenses arising or incurred under this Bill of Lading; additional freight or other charges; deadfreight; special freight for the carriage of special containers; return freight if the Goods are returned. |
| **Goods:** | Means the cargo supplied by the Merchant and includes any Container not supplied by or on behalf of the Carrier. |
| **Hague Rules:** | Means the provisions of the International Convention for Unification of certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924. |
| **Hague-Visby Rules:** | Means the Hague Rules as amended by the Protocol signed at Brussels on 23rd February 1968. |
| **Merchant:** | Means the shipper, the consignee, the receiver of the Goods, the holder of this Bill of Lading, any person owning or entitled to the possession of the Goods or this Bill of Lading, any person having a present or future interest in the Goods or any person acting on behalf of any of the above mentioned persons. |
| **Package:** | (1) the Container when the Goods are shipped in a Container (2) the skid or pallet when Goods are shipped on a skid or pallet and stuffed in a Container, and the Container is adjudged not to be the package for the purposes of the Carrier's limitation of liability (3) the skid or pallet when Goods are shipped on a skid or pallet but not in a Container (4) that shipping unit which contains the greatest quantity of the Goods and to which some packaging preparation for transportation has been made which facilitates handling even though it does not conceal or completely enclose the Goods. This clause does not apply to Goods shipped in bulk, and it supersedes any inconsistent provision which may be printed, stamped or written elsewhere in this Bill of Lading. |
| **Participating Carrier:** | Means the ocean carrier and any other water, land or air carrier involved in the Carriage of the Goods whether it be a Port to Port or a Combined Transport movement. |
| **Person:** | Means an individual, a partnership, a body corporate or other entity. |
| **Port to Port Shipment:** | Means when the port of loading and the port of discharge only are shown on the face hereof and neither the place of acceptance nor the final destination are stipulated on the face hereof. |
| **Shipping Unit:** | Means freight unit and the term "unit" as used in the Hague Rules and Hague-Visby Rules. |
| **Stuffed:** | Means filled, consolidated, packed, loaded, or secured. |

## 2. CARRIER'S TARIFF

The responsibility of the Carrier is limited to that part of the Carriage from and during loading onto vessel up to and during discharge from the vessel and the Carrier shall not be liable for any loss or damage whatsoever in respect of the Goods or for any other matter arising during any other part of the Carriage even though Charges for the whole Carriage have been charged by the Carrier. The Merchant appoints and/or authorizes the Carrier as agent to enter into contracts on behalf of the Merchant with others for transport, storage, handling, or any other services in respect of the Goods prior to loading and subsequent to discharge of the Goods from the vessel without responsibility for any act or omission whatsoever on the part of the Carrier or others and the Carrier may as such agent enter into contracts with others on any terms whatsoever including terms less favorable than the terms in this Bill of Lading.

**(2) COMBINED TRANSPORT**

(A) The carrier acts as agent for Merchant with regard to procuring inland and ocean transportation. If, for any reason, it is adjudged that the Carrier was not acting as the Merchant's agent, then in addition to the defenses and limitation of liability permitted to the Carrier by law and by this bill of lading, the Carrier shall also have the benefit of all defenses available to the participating carrier(s) by law and by the terms of its or their contracts of Carriage and tariffs, all of which shall be deemed incorporated in this bill of lading, as applicable and with respect to inland transportation of the Goods, Carrier will be afforded all of the defenses according to the provisions of any International Convention or national law which is compulsorily applicable in the country, where the inland transportation took place or, if no such law or convention is applicable, then according to the Participating Carrier's contracts of carriage and/or tariffs, if any.

(B) Save as is otherwise provided in this Bill of Lading, the Carrier shall be liable for loss of or damage to the Goods occurring from the time that the Goods are taken into his charge until the time of delivery to the agent set out below.

(i) If the place where the loss or damage occurred cannot be proven.

(a) The Carrier shall be entitled to rely upon all Defenses under COGSA or the Hague-Visby Rules under 6(a) or (b) above had the loss or damage occurred at sea or where the loss or damage occurred cannot be proved, said loss or damage shall be presumed to have occurred at sea.

(b) Where under (i) above, the Carrier is not liable in respect of some of the factors causing the loss or damage, the Carrier shall only be liable to the extent that those factors for which he is liable have contributed to the loss or damage. (c) Subject to 8(c) below,

where the Hague Rules (such as COGSA) or the Hague-Visby Rules (such as COGWA) or any legislation applying either Rules is not compulsorily applicable, the Carrier's liability shall not exceed US$500 per package or shipping unit or US$2.00 per kilo of the gross weight of the Goods lost, damaged in respect of which the claim arises or the value of such Goods, whichever is the less. (d) The value of the goods shall be determined according to the CIF value. (ii) If the place where the loss or damage occurred can be proved: (a) the liability of the Carrier shall be determined by the provisions contained in any international convention or national law of the country which provisions: (A) cannot be departed from by private contract to the detriment of the Merchant; and (B) would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of Carriage where the loss or damage occurred and had received as evidence thereof any particular document which must be issued in order to make such international convention or national law applicable; (b) with respect to the transportation in the United States of America or in Canada to the Port of Loading or from the Port of Discharge the responsibility of the Carrier shall be to procure transportation by carriers (one or more) and such transportation shall be subject to the inland carriers contract of carriage and tariffs and any law compulsorily applicable. The Carrier guarantees the fulfillment of such inland carrier's obligations under their contracts and tariffs; (c) where neither (i) or (ii) above apply any liability of the Carrier shall be determined by 7(b)(A) above.

**8. GENERAL PROVISIONS**

**(1)** Delay, Consequential Loss Save as otherwise provided herein, the Carrier shall in no circumstances be liable for direct, indirect or consequential loss or damage caused by delay or any other cause whatsoever and howsoever caused. Without prejudice to the foregoing, if the Carrier is found liable for delay, liability shall be limited to the freight applicable to the relevant stage of the transport.

**(2)** Package or Shipping Unit Limitation

Where the Hague Rules **(COGSA)** or Hague-Visby Rules **(COGWA)** or any legislation making either Rules compulsorily applicable to this Bill of Lading, the Carrier shall not unless a declared value has been noted in accordance with (C) below, be or become liable for any loss or damage to or in connection with the Goods in an amount per package or shipping unit in excess of the package or shipping unit limitation as laid down by either of the Rules or legislation. Such limitation amount according to COGSA is US$500 and according to COGWA is 666.67 units of account per package or units of account per kilogram of gross weight of the Goods lost or damaged, whichever is the higher. If no limitation amount is applicable under either of the Rules or legislation the limitation shall be US$500.

**(3)** Ad Valorem: Declared Value of Package or Shipping Unit The Carrier's liability may be increased to a higher value by a declaration in writing of the value of the Goods by the shipper upon delivery to the Carrier of the Goods for shipment, such higher value being inserted on the front of this Bill of Lading in the space provided and, if required by the Carrier, extra freight paid. In such case, if the actual value of the Goods shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

(4) Rust, etc. It is agreed that superficial rust, oxidation or any like condition due to moisture is not a condition of damage but is inherent to the nature of the Goods and the acknowledgement of the receipt of the Goods in apparent good order and condition is not a representation that such conditions of rust, oxidation or the like did not exist on receipt.

(5) Notice of Loss or Damage

The Carrier shall be deemed prima facie to have delivered the Goods as described in this Bill of Lading unless notice of loss of or damage to the Goods indicating the general nature of such loss or damage shall have been given in writing to the Carrier or to his representative at the place of delivery before or at the time of removal of the Goods into the custody of the person entitled to delivery thereof under this Bill of Lading or, if the loss or damage is not apparent, within three consecutive days thereafter.

(6) Time-bar

(A) Unless notice of loss and the general nature of such loss be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or if the loss is not apparent, within three (3) consecutive days after that delivery, the Goods shall be presumed to have been delivered as described in this Bill of Lading.

(B) Where the loss has occurred in the custody of a Participating Carrier, the Carrier shall be discharged from all liability in respect of loss unless notice of claim is filed and suit is brought within nine (9) months after delivery of the Goods or the date when the Goods should have been delivered or the time period prescribed by the Participating Carrier's contract of carriage, tariff or by law covering such Participating Carrier or overland carriage whichever is less (in the United States, pursuant to the Carmack Amendment, 49 U.S.C. ◊11-107(a), suit must be brought within nine months).

(C) In any event, the Carrier shall be discharged from all liability in respect of loss unless suit is brought within one (1) year after delivery of the Goods or the date when the Goods should have been delivered.

## 9. MERCHANT'S RESPONSIBILITY

(1) The description and particulars of the Goods set out on the face hereof are furnished by the Merchant and the Merchant warrants to the Carrier that the description and particulars including, but not limited to, of weight, content, measure, quantity, quality, condition, marks, numbers and value are correct.

(2) The Merchant shall comply with all applicable laws, regulations and requirements of customs, port and other authorities and shall bear and pay all duties, taxes, fines, imposts expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods.

(3) The Merchant undertakes that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.

(4) No Goods which are or may become dangerous, inflammable or damaging or which are or may become liable to damage any property or person whatsoever shall be tendered to the Carrier for Carriage without the Carrier's express consent in writing and without the Container or other covering in which the Goods are to be transported and the Goods being distinctly marked on the outside so as to indicate the nature and character of any such articles and so as to comply with all applicable laws, regulations and requirements. If any such articles are delivered to the Carrier without such written consent and marking or if in the opinion of the Carrier the articles are or are liable to become of a dangerous, inflammable or damaging nature, the same may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Charges.

(5) The Merchant shall be liable for the loss, damage, contamination, soiling, detention or demurrage before, during and after the Carriage of property (including, but not limited to, Containers) of the Carrier or any person or vessel (other than the Merchant) referred to in 5(2) above caused by the Merchant or any person acting on his behalf or for which the Merchant is otherwise responsible.

(6) The Merchant shall defend, indemnify and hold harmless the Carrier against any loss damage, claim, liability or expense whatsoever arising from any breach of the provisions of this clause 9 or from any cause in connection with the Goods for which the Carrier is not responsible.

## 10. CONTAINERS

(1) Goods may be stuffed by the Carrier in or on Containers and Goods may be stuffed with other Goods.

(2) The terms of this Bill of Lading shall govern the responsibility of the Carrier in connection with or arising out of the supply of a Container to the Merchant, whether supplied before or after the Goods are received by the Carrier or delivered to the Merchant.

(3) If a Container has been stuffed by or on behalf of the Merchant.

(A) the Carrier shall not be liable for loss of or damage to the Goods

(i) caused by the manner in which the Container has been stuffed

(ii) caused by the unsuitability of the Goods for carriage in Containers

(iii) caused by the unsuitability or defective condition of the Container provided that where the Container has been supplied by or on behalf of the Carrier, this paragraph (iii) shall only apply if the unsuitability or defective condition arose (a) without any want of due diligence on the part of the Carrier or (b) would have been apparent upon reasonable inspection by the Merchant at or prior to the time when the Container was stuffed; (iv) if the Container is not sealed at the commencement of the Carriage except where the Carrier has agreed to seal the Container. (B) The Merchant shall defend, indemnify and hold harmless the Carrier against any loss, damage, claim, liability or expense whatsoever arising from one or more of the matters covered by (A) above except for

(A)(iii)(a) above.
(4) Where the Carrier is instructed to provide a Container, in the absence of a written request to the contrary, the Carrier is not under an obligation to provide a Container of any particular type or quality.

## 11. TEMPERATURE CONTROLLED CARGO

(1) The Merchant undertakes not to tender for transportation any Goods which require temperature control without previously giving written notice (and filling in the box on the front of this Bill of Lading if this Bill of Lading has been prepared by the Merchant or a person acting on his behalf) of their nature and particular temperature range to be maintained and in the case of a temperature controlled Container stuffed by or on behalf of the Merchant further undertakes that the Container has been properly pre-cooled, that the Goods have been properly stuffed in the Container and that its thermostatic controls have been properly set by the Merchant before receipt of the Goods by the Carrier.
If the above requirements are not complied with the Carrier shall not be liable for any loss of or damage to the Goods caused by such non compliance.
(2) The Carrier shall not be liable for any loss of or damage to the Goods arising from defects, derangement, breakdown stoppage of the temperature controlling machinery, plant, insulation or any apparatus of the Container, provided that the Carrier shall before or at the beginning of the Carriage exercise due diligence to maintain the refrigerated Container in an efficient state.

## 12. INSPECTION OF GOODS

The Carrier or any person authorized by the Carrier shall be entitled, but under no obligation, to open any Container or Package at any time and to inspect the Goods.

## 13. MATTERS AFFECTING PERFORMANCE

(1) If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (including the condition of the Goods) whensoever and howsoever arising (whether or not the Carriage has commenced) the Carrier may:
(A) without notice to the Merchant abandon the Carriage of the Goods and where reasonably possible place the Goods or any part of them at the Merchant's disposal at any place which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease; (B) without prejudice to the Carrier's right subsequently to abandon the Carriage under (A) above, continue the Carriage. In any event the Carrier shall be entitled to full Charges on Goods received for Carriage and the Merchant shall pay any additional costs resulting from the above mentioned circumstances.
(2) The liability of the Carrier in respect of the Goods shall cease on the delivery or other disposition of the Goods in accordance with the orders or recommendations given by any government or authority or any person acting or purporting to act as or on behalf of such government or authority.

## 14. METHODS AND ROUTE OF TRANSPORTATION

(1) The Carrier may at any time and without notice to the Merchant use (i) any means of transport or storage whatsoever, (ii) load or carry the Goods on any vessel whether named on the front hereof or not, (iii) transfer the Goods from one conveyance to another including transshipping or carrying the same on another vessel than that named on the front hereof or by any other means of transport whatsoever, (iv) at any place unpack and remove Goods which have been stuffed in or on a Container and forward the same in any manner whatsoever including but not limited to unstuffing and stuffing of less than container loads into or on other containers at transshipment ports, (v) proceed at any speed and by any route in Carrier's discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place whatsoever once or more often and in any order, (vi) load or unload the Goods from any conveyance at any place (whether or not the place is a port named on the front hereof as the intended Port of Loading or intended Port of Discharge), (vii) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions, (viii) permit the vessel to proceed with or without pilots, to tow or be towed or to be dry-docked, (ix) permit the vessel to carry Goods of all kinds, dangerous or otherwise.
(2) If a less than a full container shipment is transshipped at any intermediate port, the Carrier may break the container seal to unstuff the shipment from the container and restuff that shipment into or on another container. In this respect, the Carrier is acting as the agent of the Merchant. (3) The liberties set out in (1) and (2) above may be invoked by the Carrier for any purposes whatsoever whether or not connected with the Carriage of the Goods. Anything done in accordance with (1) above or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation of whatsoever nature or degree.

## 15. DECK CARGO

(1) Goods of any description whether containerized or not may be stowed on or under deck without notice to the Merchant and such stowage shall not be a deviation of whatsoever nature or degree. Subject to (2) below, such Goods whether carried on deck or under deck shall participate in General Average and such Goods shall be deemed to be within the definition of Goods for the purposes of the Hague Rules or any legislation making such

Rules or the Hague Visby Rules compulsorily applicable (such as COGSA) to this Bill of Lading.
(2) Goods (not being Goods stuffed in or on Containers other than open flats or pallets) which are stated on the front of this Bill of Lading to be carried on deck and which are so carried are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during carriage by sea or inland waterway whether caused by unseaworthiness or negligence or any other cause whatsoever.

### 16. NOTIFICATION AND DELIVERY CLAUSE

(1) Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for the information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability or remove the Merchant of any obligations hereunder.
(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable tariff.
(3) If the Merchant fails to take delivery of the Goods or part of them in accordance with this Bill of Lading, the Carrier may without notice remove the Goods or that part thereof and/or store the Goods or that part thereof ashore, afloat, in the open or under cover. Such storage shall constitute due delivery hereunder and there upon all liability whatsoever of the Carrier in respect of the Goods or that part thereof shall cease. (4) The Merchant's attention is drawn to the stipulation concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill of Lading.
(5) Once free time has expired, the Goods will be stored at a warehouse or receiver's terminal at the sole risk and expense of the Merchant and the Goods. However, if the Carrier believes that the Goods are likely to deteriorate, decay, lose value or incur storage or other charges in excess of their value, the Carrier may, without notice to the Merchant, publicly or privately sell or dispose of the Goods and apply the proceeds of the disposition in reduction of the Freight, and any other charges associated with the warehousing and/or sale of the Goods.

### 17. BOTH-TO-BLAME COLLISION

The both blame clause published by the Baltic and International Maritime Counsel (BIMCO) is incorporated herein by this reference.

### 18. GENERAL AVERAGE

(1) The Carrier may declare General Average which shall be adjustable according to the York/Antwerp Rules of 1974 at any place at the option of the Carrier and the Amended Jason Clause as approved by BIMCO is to be considered as incorporated herein and the Merchant shall provide such security as may be required by the Carrier in this connection.
(2) Notwithstanding (1) above, the Merchant shall defend, indemnify and hold harmless the Carrier in respect of any claim (and any expense arising therefrom) of a General Average nature which may be made on the Carrier and shall provide such security as may be required by the Carrier in this connection.
(3) The Carrier shall be under no obligation to take any steps whatsoever to collect security for General Average contributions due to the Merchant.

### 19. CHARGES

(1) Charges shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid and non-returnable in any event, whether vessel, inland carrier and/or cargo lost or not lost. (2) The Charges have been calculated on the basis of particulars furnished by or on behalf of the Merchant. The Carrier shall be entitled to production of the commercial invoice for the Goods or true copy thereof and to inspect, reweigh, remeasure and revalue the Goods and if the particulars are found by the Carrier to be incorrect the Merchant shall pay the Carrier the correct Charges (credit being given for the Charges charged) and the costs incurred by the Carrier in establishing the correct particulars.
(3) All Charges shall be paid without any set off, counterclaim, deduction or stay of execution.
(4) Any person, firm or corporation engaged by any party to perform forwarding services with respect to the Goods shall be considered the exclusive agent of the Merchant for all purposes and any payment of Freight to such person, firm or corporation shall not be considered payment to the Carrier in any event. Failure of such person, firm, or corporation to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of the Freight.
(5) Should the Merchant fail to make timely payment of the applicable Freight, the Merchant shall be liable to Carrier for all costs and expenses including attorneys' fees associated with the collection of such Freight from the Merchant plus 6% of interest calculated from the date the Freight became due.

### 20. LIEN

The Carrier shall have a lien for General Average contribution and for Freight for the Carriage of the Goods and on any documents relating to the Goods as well as in respect to unpaid Freight from any previous Carriage on behalf of the Merchant who owes that Freight to the Carrier. The Carrier has the right to sell the Goods at public or private sale without notice to the Merchant to satisfy the lien in whole or in part. If the proceeds of this sale fail to cover the whole amount due, the Carrier is entitled to recover the deficit from the Merchant.
### 21. VARIATION OF THE CONTRACT

No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such waiver or variation is in writing and is specifically authorized or ratified in writing by a director or officer of the Carrier who has the actual authority of the Carrier so to waive or vary.

22. PARTIAL INVALIDITY
If any provision in this Bill of Lading is held to be invalid or unenforceable by any court or regulatory or self regulatory agency or body, such invalidity or unenforceability shall attach only to such provision. The validity of the remaining provisions shall not be affected thereby and this Bill of Lading contract shall be carried out as if such invalid or unenforceable provision were not contained herein.

23. LAW AND JURISDICTION (a) To Or From United States Ports. The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of the United States. Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the United States District Court for the Southern District of New York.

(b) To And From Non-U.S. Ports. The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by English law. Any and all actions concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before a London court of competent jurisdiction.

# Exhibit B

# Shipco Transport Inc

80 Washington Street
Hoboken, New Jersey
USA

Telephone : +1 201 216 1500
Telefax : +1 201 216 9550
E-mail : corp@shipco.com
Website : www.shipco.com

**Shipco Transport**

| | | |
|---|---|---|
| ATTN: ACCOUNTS PAYABLE | Statement of Account | Account Number: JDBINY |
| JDB INTERNATIONAL INC. | | As of Date :   15-SEP-2008 |
| ***DO NOT TAKE BOOKINGS*** | | Page    1 |
| 780-A APEX ROAD | | |
| SARASOTA FL 34240 | | |
| UNITED STATES | | |

Tel: 941-342-4545
Fax: 19143424546

| Invoice # | Apply To | Src | Type | Date | B/L # | Customer Ref | Invoice Amount | Balance |
|---|---|---|---|---|---|---|---|---|
| 18689D | 18689D | OB | IN | 03-SEP-2002 | 97269771 | → Air shipment | 2,562.00 | 2,562.00 * |
| 69121N | 69121N | CD | IN | 19-DEC-2007 | YANT1521083 | YANTIAN | 29,500.00 | 29,500.00 |
| 78077N | 78077N | CD | IN | 15-JAN-2008 | YAN1519544 | 1519544 | 1,708.00 | 1,708.00 |
| 78078N | 78078N | CD | IN | 15-JAN-2008 | YAN1521067 | 1521067 | 956.00 | 956.00 |
| 78080N | 78080N | CD | IN | 15-JAN-2008 | YAN1521197 | 1521197 | 831.00 | 331.00 |
| 78082N | 78082N | CD | IN | 15-JAN-2008 | YAN1519546 | 1519546 | 1,346.00 | 1,346.00 |
| 78085N | 78085N | CD | IN | 15-JAN-2008 | YAN1519549 | 1519549 | 1,931.00 | 1,931.00 |
| 78095N | 78095N | CD | IN | 15-JAN-2008 | YAN1519541 | 1519541 | 1,341.00 | 1,341.00 |
| 78098N | 78098N | CD | IN | 15-JAN-2008 | YAN1519545 | 1519545 | 1,363.50 | 1,363.50 |
| 78101N | 78101N | CD | IN | 15-JAN-2008 | YANT1521083 | 1521083 | 1,606.00 | 1,606.00 |
| 78102N | 78102N | CD | IN | 15-JAN-2008 | YAN1519533 | 1519533 | 956.00 | 956.00 |
| 78103N | 78103N | CD | IN | 15-JAN-2008 | YAN1521055 | 1521055 | 616.00 | 616.00 |
| 78105N | 78105N | CD | IN | 15-JAN-2008 | YAN1519917 | 1519917 | 1,401.00 | 1,401.00 |
| 87012N | 87012N | CD | IN | 11-FEB-2008 | YAN1519917 | 646521 | 5,000.00 | 5,000.00 |
| 22478V | 22478V | CD | IN | 16-APR-2008 | YAN1519544 | 1519544 | 11,445.98 | 11,445.98 |
| 23543V | 23543V | CD | IN | 18-APR-2008 | YAN1519549 | YAN1519549 | 8,458.40 | 8,458.40 |
| 23546V | 23546V | CD | IN | 18-APR-2008 | YAN1519546 | YAN1519546 | 8,452.40 | 8,452.40 |
| 23547V | 23547V | CD | IN | 18-APR-2008 | YAN1519546 | YAN1519546 | 10,357.00 | 10,357.00 |
| 23551V | 23551V | CD | IN | 18-APR-2008 | YAN1521067 | YAN1521067 | 10,357.00 | 10,357.00 |
| 23552V | 23552V | CD | IN | 18-APR-2008 | YAN1519541 | YAN1519541 | 10,393.00 | 10,393.00 |
| 10083048 | 10083048 | CD | IN | 09-SEP-2008 | YAN1519546 | FCL YANTIAN | 21,856.65 | 21,856.65 |

| *=Approved via STI-Online | Current | 31-60 Days | 61-90 Days | Over 90 Days | Total |
|---|---|---|---|---|---|
| | 21,856.65 | 0.00 | 0.00 | 110,479.28 | 132,335.93 |

** The Liability of Shipco Transport for damage or loss to the goods will be governed by and limited to the standard terms and conditions of the Shipco Bill of Lading, or Airway Bill, as applicable. A copy of the Bill of Lading or Airway Bill is available upon request.

** For access to STI-Online, which offers on-line schedules, bookings, documentation, shipment tracking and other e-commerce tools, please visit our website.

Accounting of Shipco Bills of Lading and Carrier Charges:

| SHIPCO B/L NO # | CONTAINER # | FREIGHT DUE ($US) | STORAGE DUE ($US) |
|---|---|---|---|
| YAN1519549 | MSCU8738070 | $ 1,831.00 | $9,000.00 |
| YAN1519546 | MSCU939700 | 1,340.00 | 9,000.00 |
| YAN1519541 | TRLU7090169 | 1,341.00 | 8,000.00 |
| YAN1521067 | MSCU8451455 | 956.00 | 8,000.00 |
| YAN1521055 | INKU6126852 | 616.00 | 12,000.00 |
| YANT1521083 | ECMU9620226 | 1,606.00 | 11,000.00 |
| YAN1519533 | CRUX9459215 | 956.00 | 11,000.00 |
| YAN1519917 | TGHU7618908 | 1,406.00 | 13,000.00 |
| YAN1519544 | MSCU8124718 | 1,706.00 | 18,000.00 |
| YAN1521197 | MSCU6338877 | 831.00 | 4,000.00 |
| YAN1519545 | MSCU8555676 | 1,363.50 | 10,000.00 |

On the date this account was sent to Lapton, Feb. 12, 2007, ocean freight charges were stated in the sum of (US) $ 13,952.50. The amount of charges stated, included demurrage and related charges, totaled (US) $126,952.50. Additional demurrage and related charges accrued after that date resulting in an overall total due of $129,773.93. See invoices from ocean common carriers in Exhibit D.

# Exhibit C

12/18/07  TUE 10:24 FAX 7572289602    CMA-CGM (AMERICA) INC    ☒001

5701 Lake Wright Drive
Norfolk VA VA 23502

## CMA CGM

**ORIGINAL**

| Invoice |
|---|

Established in : Norfolk
Invoice Date : 18-DEC-07
Invoice Number : 39444
Type : Demurrage Invoice
Cross Ref :

Attention of :
Customer Code : 0000041539001 / 143
Customer Name : SHIPCO TRANSPORT INC
Customer Address : Attn: Accounts Payable
80 WASHINGTON ST
PO BOX 1411
HOBOKEN NJ 07030

| Reference : | BL# SETTLEMENT- NFT200712 - E - 12/30/2007 | | | | |
|---|---|---|---|---|---|
| Item /description | Vessel Voyage | Date | POL – POD POO – FPD | Unit Price Qty | Amount (USD) |
| (C)* MISC DEMURRAGE CHARGES | | | | 29,500.00 | 29,500.00 |
| | DDC200712 | | | 1.00 | |

Issued By : Kelly Smith

| TAX Amount : | 0.00 | Gross amount : |
|---|---|---|
| **Total Net Amount Due in USD** | | **29,500.00** |

Remarks :MISC DEMURRAGE CHARGES INKU8120852,CRXU94592 !5,RCMU9620026

Terms : IMMEDIATE
Due By : 18–DEC-07

Please Remit Checks To : CMA–CGM America Inc. – Norfolk
5701 Lake Wright Drive
Norfolk VA VA 23502

Please Remit Wires To:    CMA–CGM (America), Inc. – Operational Account
Bank of America
One Commercial Place
Norfolk, VA 23510–2103
Account Number: 004127083809
ABA: 026009593

We now accept Visa or MasterCard payments for non–freight invoices not to exceed $2,500.00. Please call (757)961–2400 for details.

C* = item billed on the name and on behalf of CMA CGM S.A.
FR72582024422 – 4, quai d'Arenc – 13235 Marseille Cedex 02 – France

Page 1 / 1

CMA–CGM America Inc. – Norfolk, 5701 Lake Wright Drive, Norfolk, VA, 23502, United States – Tel :757–961–2100 – Fax :1–877–534–6419 –
Internet site : http://www.cma–cgm.com

# NYK Line (NA) Inc.
## 300 Lighting Way
## Secaucus, NJ 07094

# *INVOICE*

Shipco Transport, Inc.
80 Washington Street
Hoboken, NJ 07030

**Invoice**            **NYC    211890**
Invoice Date           1/28/2008

**Vessel:**            **Voyage:**            *Payment Due Upon Receipt*

**Import/Export    Export**

| NYK Charge Description | Amount Due |
|---|---|
| DETENTION | $5,000.00 |

**Comments:**

AAA)STORAGE CHARGES & DETENTION CHARGES BREAKDOWN AS BELOW:
=============================================================
ETA YANTIAN: August 31
10 free days' cntr and storage at Yantian:SEP 02- SEP 11
Exceed :406days (calculate to Oct 21,2007)
1)Storage charges:
RMB250 X 14 DAYS = RMB3,500
RMB490 X 392DAYS = RMB192,080
<fyi: TARIFF 1~14th RMB250/DAY, 14th+ RMB490/40'HQ/DAY)      TOTAL:RMB195,580

2)Detention charges:
RMB200.00 X 406 DAYS = RMB81,200      TOTAL:RMB81,200
<fyi: TARIFF RMB200/40'HQ>

TOTAL:RMB276,780

BBB)Devanning charge: RMB7,000(Load and unload and truck fee:RMB6,000 + Agent service fee:RMB1,000)

TOTAL: RMB283,780
(Fyi, USD1=RMB7.45)

# NYK Line (NA) Inc.
### 300 Lighting Way
### Secaucus, NJ 07094

# *INVOICE*

Shipco Transport, Inc.
80 Washington Street
Hoboken, NJ 07030

**Invoice**      NYC    211890

Invoice Date    1/28/2008

**Vessel:**                    **Voyage:**        *Payment Due Upon Receipt*

TOTAL DUE        $5,000.00

Please direct all inquiries for this invoice to Hector Gonzalez      @ (201) 553-3554

Remit Payment to:

**NYK Line (NA) Inc.
300 Lighting Way
Secaucus, NJ 07094
5th Floor - Attn: Accounting**



Giralda Farms Bld # 7 - Madison Avenue
P.O. Box 880
Madison, NJ 07940-0880
Tel  973-443-4372
Fax  973-443-4380

**INVOICE 030308**                                        3-Mar-08

TO:
SHIPCO TRANSPORT INC.
20 PULASKI STREET, BAYONNE, NJ 07002
ATTN:  KLAUS THORUP

**SHIPMENT 510743516, CONT. MSKU8127718, SHIPMENT ABANDON**

| Description | Unit Price (RMB) | Amount USD |
|---|---|---|
| Charge for Special Service | RMB 1,000.00 | $135.14 |
| Trucking Freight | RMB 6,000.00 | $810.84 |
| Overtime Storage | | $10,500.00 |
| **TOTAL** | | $11,445.98 |



# MEDITERRANEAN SHIPPING COMPANY (USA) INC.
420 Fifth Ave. New York, NY 10018
PHONE: 212-764-4800
FAX: 212-764-6599

Date: 26-Mar-08

| Invoice Number: | MM-LA893993;LA896533; |
| | |
| | BL711047; BL711070; |
| | |
| BOL#: | LA905227      "to 5000 Legal Account" |
| | LA893993;LA896533; |
| | BL711047;BL711070; |
| | LA905227 |
| Ref: | attnt: KLAUS THORUP |
| Issued by: | MMEREU |

Bill to:
SHIPCO TRANSPORT INC.
80 WASHINGTON STREET
HOBOKEN, NJ 07030

| abandoned cargo settlement | Yantian | MSCULA893993 | MSCU8738070 | 8,458.40 | 1 | $8,458.40 |
| abandoned cargo settlement | Yantian | MSCULA896533 | MSCU9397003 | 8,452.40 | 1 | $8,452.40 |
| abandoned cargo settlement | Yantian | MSCUBL711047 | MSCU6338877 | 10,357.00 | 1 | $10,357.00 |
| abandoned cargo settlement | Yantian | MSCUBL711070 | MSCU8451455 | 10,357.00 | 1 | $10,357.00 |
| abandoned cargo settlement | Yantian | MSCULA905227 | TRLU7090169 | 10,393.00 | 1 | $10,393.00 |
| | | | | | **Total Due:** | $48,017.80 |

The Chase Manhattan Bank ABA 0210-0002-1
345Hudson Street
New York, NY 10014
Account Title:      Mediterranean Shipping Company (USA) Inc.
                    420 Fifth Ave., New York, NY 10018
                    Account No: 011-4-018229
Please be sure to include your Bill of Lading no. with your transfer. Please also send an email to
UAC@MSC.US to insure that all charges are applied accordingly and in a timely manner.



# MEDITERRANEAN SHIPPING COMPANY (USA) INC.

420 Fifth Ave. New York, NY 10018
PHONE: 212-764-4800
FAX: 212-764-6599

Date: 3-Sep-08

Bill to:
SHIPCO TRANSPORT INC. (LAX)
C/O CFR LAUREL PARK ROAD
311 WEST ARTESIA BLVD
COMPTON CA 90220

Invoice Number:      MM-LA884711 "to 5000 Legal Account"
BOL#:                MSCULA884711
Ref.:                1519545 608084044
Issued by:           MMereu - MSC NYC

| Item | Port Depot | BOL Number | Eq Number | Unit Price | Qty | Amount |
|---|---|---|---|---|---|---|
| HANDLING CHARGES | Yantian | MSCULA884711 | MSCU8555676 | 543.00 | 1 | $543.00 |
| INSPECTION CHARGE | Yantian | MSCULA884711 | MSCU8555676 | 282.05 | 1 | $282.05 |
| STORAGE (WITH DISCOUNT) | Yantian | MSCULA884711 | MSCU8555676 | 18,519.60 | 1 | $18,519.60 |
| DEMURRAGE (WITH DISCOUNT) | Yantian | MSCULA884711 | MSCU8555676 | 2,512.00 | 1 | $2,512.00 |
| | | | | | Total Due: | $21,856.65 |

The Chase Manhattan Bank ABA 0210-0002-1
345 Hudson Street
New York, NY 10014
Account Title:       Mediterranean Shipping Company (USA) Inc.
                     420 Fifth Ave., New York, NY 10018
                     Account No: 011-4-018229

Please be sure to include your Bill of Lading no. with your transfer. Please also send an email to
UAC@MSC.US to insure that all charges are applied accordingly and in a timely manner.